The third case this morning, Rodney Rucker versus James Marshall et al. The first case this morning, Rodney Rucker versus James Marshall et al. Good morning, your honors. May it please the court. Fifty seconds into the encounter between Rucker and Officer Marshall, Rucker falsely stated that he didn't have an identification, even though he was sitting in a running vehicle in the driver's seat. That triggered probable cause under Mississippi law, which requires motor vehicle operators to possess a valid driver's license. I've watched the video from multiple angles. Is it undisputed that the vehicle was running? Yes, your honor. So the central question in this case is whether Officer Marshall was justified in getting to that 52nd mark. He was for two independent reasons. First, even though there was reasonable suspicion from the inception of the encounter, reasonable suspicion was not even required because there was no seizure for Fourth Amendment purposes. For there to be a seizure, there had to be a show of authority such that a reasonable person would believe he or she was not free to leave. The focal point is on the coerciveness of the environment. Where was the officer parked? He was parked behind him, which case law says is not necessarily indicative of a seizure. And the important point there is there was no blue activated lights. This is not like a Terry stop or somebody's, you know, or a traffic stop. Somebody's pulling them over on the side of the road. Case law distinguishes between those two scenarios. Was he boxed in in some way where he could not have driven away? The best view, I think, is Officer Carter's video, which suggests he was behind him, but the car could have backed away and maneuvered. But, again, I don't think the fact whether he was blocked in or not is not dispositive under the case law. Closer to a seizure if you're blocked in. Just seeing what other facts there are. And the other fact, Your Honor, when he gets out of the car, he announces himself as a police officer, non-confrontational, tells him why he's there, eventually asks benign questions like, are you staying at the motel, do you have an identification? Those are precisely the type of actions that the cases say do not constitute a seizure. United States v. Drayton is a good example. That's the Greyhound bus case where the three officers show up, you know, ask passengers, can they have a gun on them, show their badges and say, can I search your pouches, can I search your person? Certainly asking somebody to search your possessions, your person, is more evasive than saying, are you staying at this motel and do you have an identification? The central point of cases like Drayton, Justice Kennedy's opinion suggests that citizens have an obligation to both know and assert their rights. Police officers don't have to tell any of us that we're either seized or not seized or that we're free to leave. But now in this case, Rooker obviously eventually didn't think he was seized because he said, I don't have to give you your license. The problem for him is that that came too late because at the 52nd mark he had already voluntarily answered a question that gave rise to probable cause. For you to get a reversal in this case, though, I mean, correct me if I'm wrong, I don't think we have to rule that there was not even a Terry stop. Meaning we could assume maybe or maybe you disagree. We could assume for the sake of argument that when the officer parks behind the car and walks up to the window and says, hey, I just want to check out what you're doing here. Tell me who you are, that that, in fact, is a Terry stop. Couldn't we just assume that? Certainly could, Your Honor. And that's sort of where I came in at to say even if it is a seizure, there's reasonable suspicion. But certainly as I dug in for the argument and really started looking at the seizure cases, I became even more confident that this was just simply not a seizure. One of the other cases I would point out is this court's decision in United States v. Smith where I think Judge Higginbotham distinguishes between getting out with somebody and saying, you know, I'm here because there's a lot of crime in the area and you specifically are under investigation. The latter didn't happen here. The latter would be suggestive that the person is not free to leave. The former, this court's decision say are not. Certainly asking for identification under Drayton, that's not a seizure. So there's literally no facts in this case that cases have held to be a seizure. And that's specifically important here where you have totality of the circumstances and he's got to show it's a clearly established seizure, not just a seizure. Now if one assumed this was a seizure or thought that it was a seizure, at least a Terry stop, I think we have cases that say one's mere presence in an area where there's been crime is not sufficient to allow an officer to suspect that there's a crime going on. Certainly that's correct, Your Honor. It's not dispositive, but it's relevant. What else? So we need to, just because he's parked there. Correct, Your Honor. High crime area, 3 a.m. in the morning, running vehicle for at least five minutes and 22 seconds, and sitting in a car that's registered to an individual that lives supposedly five minutes away. So the combination of all of those factors certainly give rise to reasonable suspicion and certainly to arguable reasonable suspicion, which is all that's required in this case. We cite the Judge Bibas line in our brief that says reasonable suspicion requires more than a hunch, but not much more. And that was a criminal case. Again, here all we're talking about is arguable reasonable suspicion, not actual reasonable suspicion. The Supreme Court tells us that probable cause is a low bar, reasonable suspicion certainly a lower bar, and arguable reasonable suspicion is at the bottom of the spectrum, and we have that here based on all of those undisputed facts. My friend on the other side says, well, all of those things are completely lawful behavior. That very well may be true, and, in fact, Officer Marshall told Rucker that during the encounter, but the cases say that completely lawful activities, completely innocent facts can nonetheless be suspicious facts. And so that's what we have here. Again, it's the combination of all of these different acts that were going on. One alone may not be dispositive, but the combination of all of them certainly give rise to arguable reasonable suspicion. The good measuring stick that I think we use in our brief is the Flowers case. That's the city of Jackson case where an officer observed an individual for only 10 to 15 seconds in a running vehicle, and the court in the criminal context said that was reasonable suspicion. Certainly we have a much longer period of time here, and we're only talking about arguable reasonable suspicion. You mean about the breaking of the window? I think, and I can't remember it as I sit here, we have a case about the cop stopping like a grandmother, and she won't get out of the car because the baby's in the car with her or something. They break the window and drag her out. I think we said that was excessive force in that case. I'm not sure if you're familiar with that or you've cited it. I'm not, Your Honor, but the case I am familiar with is the Priest case that we cite in our brief, and I think it would be hard to find a more analogous case than that one from this court in this context. There's certainly no baby in the car here, and the important point on the excessive force claim is by this time, Mr. Rucker had refused at least 20 commands to exit his vehicle. That is active resistance under any definition of that phrase, and that gave rise for the officers to remove him from the vehicle. Again, I would point to the Priest case. I think that's probably the closest case on point. On the First Amendment claim, that one goes away for the same reasons. Under Neves, probable cause generally defeats that, but there's an alternative reason as well. It's not even clearly established that an individual who's objecting to a personal arrest at 3 a.m. when no one else is around, that that's even protected speech under the First Amendment. I would point to the Round Rock case that we cite in the briefing. I think that was Judge Clement's case where qualified immunity was granted on that very issue. What about the unlawful arrest claim? What's your best argument for probable cause? Again, I think 50 seconds in, once he admits that he doesn't have an identification on him while he's sitting in the driver's seat of a running vehicle, that triggers probable cause under the Mississippi statute that requires motor vehicle operators to possess a license. But then I think you also have probable cause once, if he's got reasonable suspicion to be there, then he's got justification to tell him to get out of the car. Once he doesn't get out of the car, that's failure to comply as well, so he also had probable cause for failure to comply. I think those are probably the easiest things to point to. And on the reasonable suspicion, certainly there's reasonable suspicion from the inception of the encounter, but once he gets up to the car, rather than dispel the suspicion, the suspicion grows even greater. You have to remember this is February and it's freezing cold, and this individual is sitting in the car in a short-sleeved shirt. That could be suggestive of drug use. He's sitting in a car with the back seat full of belongings, even a bicycle in the back at 3 a.m. Nobody else is around. That could be suggestive of theft. Certainly they could be innocent facts too, but again, we're talking about reasonable suspicion. And so there's just a combination of facts here. Again, I think the Flowers case is probably a good baseline. Remind me, when were the police able to determine that he had a local address? Prior to walking up to the encounter. By running the license plate? By running the license plate, yeah. And that's where the 5 minutes and 22 seconds come from. So here's the record evidence on that particular portion. So Officer Marshall says, I sat there and watched him for 15 minutes. At his deposition, Rucker said, I don't know how long he was watching me. He then filed a sham affidavit in response to summary judgment that says, well, it couldn't be 15 because I was only there for 10. But we know for sure that there's a dispatch log that he at least observed him for 5 minutes and 22 seconds because that's the time period from the dispatch call to the walking of the vehicle, which, again, is more than 5 minutes greater than the Flowers case. You know, on the excessive force claim, again, qualified immunity, cases like Priester, I think, are directly on point. But just from an overarching standpoint, you know, the analytical problem in this case is that the district court didn't do a qualified immunity analysis. He used a paragraph and said, you know, quoted general QI standards and then made no effort to actually identify clearly established law and then cited constitutional standards and said, well, a jury could find X, Y, and Z without saying how a jury could find X, Y, and Z and without pointing to any disputed facts in the case. And that simply is not what QI demands in this context. And for those reasons, we would ask that the court reverse and render and grant qualified immunity in favor of these three officers. Thank you. All right, Mr. Butler, we'll hear you again. May it please the court. My name is Brandon Fletches, and I'm here today on behalf of Rodney Rucker, who is the plaintiff at the district court level and who is the appellee in this court. Obviously, we have brought a case under 42 U.S.C. Section 1983 against officers of the Senatobia Police Department, and we allege in that case that Mr. Rucker was seized without reasonable suspicion, was arrested without probable cause, and in violation of his First Amendment rights, and he was subjected to excessive force during that arrest. Because I think it's the simplest argument to address and the simplest claim to make an argument for remand to the district court level, I'll address the excessive force claim first. That claim turns almost entirely on disputed facts, despite the fact that all of this was on video. The case which Judge Duncan was referencing is DeVille v. Marcantel. That's cited in our brief, and it could not be more on point, except that there was more in that case than there was in this case because it was actually a speeding stop, and they actually had a reasonable suspicion of probable cause to conduct that stop and to order her out of the vehicle because it was a lawful stop from the word go. Instead, she did not exit the vehicle, verbally refused the officers, and passively resisted inside the car. This court noted that that was passive resistance. Just not exiting the car is not active resistance. So passive resistance and not stepping out of her car with verbal orders, and this court ruled that it was excessive force to subject her to force and to— In that case, if I'm recalling, and we always cite that case, they dragged her out of the window, I think. I think they dragged her out of the window. Your Honor, I think they opened the door and pulled her out of the car. I could be wrong about that. What time of day was it? I think it was afternoon. I mean, is it distinguishing, though, that here we've got 3 o'clock in the morning, the guy's sitting in a running car. I mean, I can imagine that officer—I'm not sure. I think this argument is being made on the other side, that the officer senses a potentially dangerous situation where you have a guy not complying with order to get out of the car, 3 o'clock in the morning, car's running. What do you think? Your Honor, there was no reason to believe that Mr. Rucker was dangerous at all. The case law in addressing that type of concern looks for furtive movements inside a car, which I assume they'll say that he moved inside the car, and, of course, you can listen to Officer Marshall's language about stop digging around in that effing car. But what he does is pulls out a cell phone and begins to text or scroll on his cell phone, not a gun. The vast majority of the cases addressing the reasonable suspicion inquiry arise out of suppression hearings at the district court level, usually suppression hearings that are denied and reach this court with deference to the government addressing those issues. Well, counsel, whatever distinctions you want to make or not make with DeVille, it seems to me what Mike Mills skipped is that we're talking about qualified immunity. We're not talking about an arrest of this person and whether there's probable cause to do it and whether the conviction that follows was proper. It's whether this officer acted improperly under clearly established law. So two steps. Did he violate constitutional rights? And if we make that determination, are we making that based on clearly established law? And Judge Mills didn't, it seems to me, do any of that. So any distinction with DeVille, and there are some, could very easily make it not clearly established law. So it does seem to me on each of these steps, or not each of them, the total combination on whatever claims that you have, you need to show us that there's clearly established law that shows to any reasonable officer, all reasonable officers, that what they did would be improper. So help me with this. Do you at least agree that that's not what Judge Mills did? You're not going to get me to say anything bad about Judge Mills, but I will say. I'm not going to say anything bad. I'm just asking a fact. I will say. Not rhetorical excess, just a fact. There is an argument to be made that the district court did not separate issues and analyze completely issues as may be required under certain requirements. So what clearly established law did this officer violate at the different points that you need to support your claim? So with the mixing of the issues and the question, I would say that DeVille is right on point with the excessive force case. I would also, specifically with excessive force, now a case Bagley v. Guillen, which is 90F4-799, and I'll file a 28-J letter with anything that's cited that's not in my opinion. Now this was a 2024 case, but it decided based on 2019 events. So it was clearly established as of 2019 Bagley reiterated the proposition that the amount of force used must meet the need for the force and reiterated that even if there was prior resistance, once resistance has ceased, then the need for force ceases. So our position is, and it's clearly briefed, that after the window was broken, there was zero resistance from Mr. Rucker. He stands up out of the car voluntarily. Despite the fact that they say they had to pull him out, you can watch the video and see him stand up. At that point, he's a rag doll. Two officers, two large officers, throw him to the ground. They pulled a screenshot saying, look, court, you can see he's on his side. If you watch the video, he's on his side as a result of being knocked to his side by the officers. And they're saying, turn over. He says okay, rolls to his stomach less than a second after that verbal order. Despite that, his head is shoved into the ground, and he's got objective injuries that follow that. I think it's well briefed enough in the brief to not go over the de minimis. So I've watched the video. I can see the level of force being used. Tell me a case where in order to, I mean, tell me a case where in effectuating an arrest, the level of force that's comparable to force here we say is excessive. In the Hanks case cited in my brief and the Tremble v. Frouge case cited in my brief. Well, I remember those case names, but I don't remember exactly the kind of force that was used. Those were spear tacklers. Okay, I remember that. All right, that's a spear tackle of somebody who's got his hands on the back of the car and is not doing anything. Right. And again. What is Tremble? Tremble was a similar circumstance where I believe there was some resistance in pulling away from the officer's grasp and a takedown in those circumstances that was viewed as passive resistance and a takedown in those circumstances. So in your view, is any use of force here, taking him down on the ground is per se excessive force? Absolutely. When he stood up out of that car, they could have said, turn around and put your hands behind your back. They didn't. At that point, they never told him he was under arrest. They never said anything like that. And I'll also point out in DeVille, they told her they were going to break her window. They told her, if you don't get out of that car, we're going to break your window. Though they talk about it, usually when Carter is talking about it, he's away from the scene. They never informed Rucker what was going to happen if he failed to comply. They informed DeVille, and the court still found it to be excessive force under those circumstances. You mentioned de minimis injury, but doesn't it matter that he wasn't injured here? He was injured. He had sutures and had swelling and had abrasions. And I'm aware that there are cases that point to those injuries and analyze those injuries under a de minimis standard. But the case that I've cited in the brief, the Cornelius case, states that the amount of injury necessarily must correlate with the type of need for force used. Here we argue there was no need for physical force after he stood up out of the car. So that case says any injury, some injury resulting from an excessive use of force, is by definition not de minimis. So even minor injuries or solely psychological injuries, that case specifically states that. So basically the argument that we get from defense on 1983 cases is, well, it's de minimis because they like that word, because he wasn't that hurt. And the implication there is that an officer can use unnecessary and excessive force as long as they don't hurt the guy too badly. Well, that's not the law. The law under the Cornelius case is any injury resulting from an unreasonable use of force that was not necessary amounts to an actionable injury. So that would be our argument on the de minimis standard. With regard to the initial encounter, since your Honor asked for a specific case law, first of all, for the argument that his egress was blocked from the parking space, first, let's take Officer Marshall at his word. He testified in his deposition, one, he was not free to leave. And I understand that's a subjective statement, and we're not looking at necessarily the subjective belief of the officer. We're trying to look at what would a reasonable officer believe under the circumstances. But let's take Officer Marshall at his word for a moment. He was not free to leave. Mr. Rucker was not. And he could not have backed out of the parking space. This is cited in our brief and cited in the record. He could not have backed out of the parking space because I was parked behind him. That's telling us his egress is blocked. They obviously think it's important because in the first few pages of the brief, they try to point out, well, he left some space between the vehicles. But this is a fact, not of lawyers going back and reviewing a video and saying we can make that argument that he's not that close to him, that he can get out of the parking space. But this is a fact testified to by somebody on the scene that day that Rucker could not get out of the parking space because he was parked behind him. You'll also recall from the video, and while it was a hyperbolic statement, Officer Carter told the supervising officer when looking for authority to break the window that I'm just afraid he's going to throw this car into gear and drive into the hotel. That should show the court right there that Officer Carter also perceived that he couldn't back out because of the position of Officer Marshall's car. His only option was to drive through the hotel. Now, the reason I say that's hyperbolic is because if you watch this video, there was never an indication that Rucker was a threat at all at any time. He peacefully asserted his rights. Despite being cursed at by police officers, he did not curse. Despite being yelled at and taunted by a police officer. Who should know better? He did not taunt back. He asserted his rights as calmly as you could expect a man who works at McDonald's to do. Help me with this just common sense. I mean, I've watched the videos, both of them, or multiple videos. An officer sees someone sitting in a car for at least five minutes at 3 o'clock in the morning. Maybe that's innocent. Maybe it's not. Maybe there's something going on. Maybe in this area there has been some drug activity. Why isn't it reasonable under the Fourth Amendment for the officer at least to approach the car and say, hey, I'm just checking to see if everything's on the up and up here. I want to see, know who I'm talking to. Can you tell me who you are? Give me your ID. Tell me why that's not reasonable. If it is a consensual, well, we don't have to reach reasonableness if the officer just wants to walk up and see if the person will engage in a consensual encounter with him. Well, isn't that what happened? That's not what happened because of the blocked egress. Okay, well, let's, okay, fine. The car's blocked. I actually want to know who you are. It's 3 o'clock in the morning. I just want to make sure you really are just going to McDonald's and not meeting a prostitute, right? Well, Your Honor, I'll point out there is no evidence on this record that anybody else was ever in the vicinity of Mr. Rucker that could have been his prostitute or a drug dealer. Yeah, but there's evidence that there had been prostitution activity at this complex. That's also highly disputed, and the assistant chief of police said, well, yeah, I do recall one prostitute being arrested there, which does not meet the standard for high-crime area. We heavily dispute high-crime area. Okay, drugs, drugs, fine, forget prostitutes, drugs. But, again, if you look at what they say supports, one, officers can be trained to say that a place is a high-crime area to justify anything they want to do. So what I'm saying here is that even assuming under your hypothetical, though we do not consider – It's not really a hypothetical. It's me describing the video. The officer walks up to his car and says, hey, there's kind of stuff goes on here sometimes at 3 o'clock in the morning. I just want to make sure I know who I'm dealing with. Tell me who you are. Show me your ID. The general law on the Fourth Amendment looks at officer intrusions as a cause, and they have to have a reasonable suspicion of commission of a crime where the criminal activity is afoot to accost the peace and serenity of a citizen in the United States. What I would point to that's law from this circuit is U.S. v. McKinney, 980 F. 3rd, 485, where it says in this specific instance that morning there had been shootings in this area. They witnessed people on the sidewalk with what could be gang-related clothing on, and the officers approached those people and stopped them. And this court said the officers were patrolling the area in response to recent shootings, but those shootings do not justify stopping anyone absent an articulable suspicion about a connection between the person and those crimes. So what about Mr. Rucker sitting in his vehicle indicated that he was doing drugs? What about Mr. Rucker sitting in his vehicle, warming it on a freezing cold morning, in the video you can see there's ice all over everything, indicated that he was doing drugs or meeting a prostitute or anything else? The answer to that question has to be nothing, and if the answer is nothing, how can it be a reasonable suspicion that criminal activity is afoot? The only thing that they have going for them is that it was 3 o'clock in the morning. And that his license plate indicated he was a local resident, right? Again, Your Honor, and maybe this is hokey to say, my wife and I take staycations in the same city we live in all the time and stay in a hotel. I would hate to think that that subjects me to a police officer being able to approach me simply because my tag comes back in the same city that the hotel is in. But, again, his tag is from the same city where the hotel where he was a guest. What crime does that indicate? What crime is indicated by staying at a hotel in the same city that you live in? There simply is none. It's not a crime, and it's not indicative of a crime, and that's the question that has never been answered in this case is, okay, you say it's a high-crime area. We dispute that, but you say it's a high-crime area. You specifically say narcotics and prostitution. You ran his tag. His tag did not come back as having a suspended license. That happens all the time in Mississippi, that people run a tag, and it comes back that the person has a suspended license, and as long as the person driving the car roughly matches the identity of the person it's registered to, they can pull him over. Our state says that, here, nothing came back from running the tag which would have given him any heightened suspicion whatsoever. Unless you count being in the same city as the hotel as suspicious. How this is different from other cases, look specifically at Terry. In Terry, which is the seminal case for reasonable suspicion, the activity of the suspects was that they were casing a store. They were walking back and forth, and while there may be an innocent explanation, a trained officer can look at that and say, that person may be casing the store. In Flowers, where the vehicle was parked, the vehicle was parked in such a way as to be casing the front of the store. There was no reason for them to be parked where they were, on the side of the store being blocked where they could see the entrance. Flowers is also almost specifically tailored to the city of Jackson, Mississippi, to the point that if you look at footnote four in that case, it talks about Jackson, Mississippi having one of the highest crime rates in the nation routinely and specifically talks about the neighborhood being so unsavory that it requires a task force to be on patrol in that neighborhood and talks about the neighborhood being impoverished. This hotel in Senatobia is not the same area as Jackson, Mississippi. It also focuses entirely, especially if you look at the Morris case, distinguishing Flowers on recency of crimes. So because the court has asked for specific cases, I do want to give you a few in the moments that I have left. In the Flowers case, Flowers cites U.S. v. Beck and says specifically, this does not run afoul of Beck. In Beck, the court held, by pulling so close to the Chevrolet, the officers effectively restrained the movement of the driver and his passenger, and it was apparent they were not free to ignore the officers and proceed on their way. This is another case where blocking egress constituted a seizure. Here, there's enough evidence on this record to show that he was blocking his egress. He walked up to the car shining a flashlight on Mr. Rucker. He immediately began talking to Mr. Rucker. While he was polite at the beginning, he immediately began talking to him about the crimes of narcotics and prostitution. Any reasonable officer should know that a person in Mr. Rucker's position would not feel free to leave under those circumstances. And that's all it takes for a seizure to implicate the Fourth Amendment. I'll add, if you review the case of Tyson v. Sabine, which was cited by the appellants and it cites the U.S. v. Berry, it says that this court has taken into account whether officers have blocked an individual's path and whether the officer expressed to the individual that they were suspected of crimes. That's exactly what you have here. He walks up to Mr. Rucker and begins talking about narcotics and prostitution. It's obvious that Mr. Rucker thought he was being accused because he said, who told you that? Who called? So with all of that and all of this record and just an absolute lack of reasonable suspicion, this court should send this court back to the district court level for trial. Thank you. Thank you, counsel. Your Honor, just briefly, in many ways this case has the markings of a criminal procedure exam and law school ask, is there a seizure? If there is a seizure, is there reasonable suspicion? If there's reasonable suspicion, when did it become a probable cause? But it's not a criminal case. It's a civil case and that triggers qualified immunity, which is a very demanding burden and the analysis was not performed by the district court and no clearly established law has been identified by the plaintiff in this case. If I can respond just briefly to a few of the comments by my side. He said that it's never been answered what crime, the video. I mean, we just watched the video and Officer Marshall immediately announced to Mr. Rucker why he was there and what he was concerned about. So he knew that all along. The DeVille case, Judge Duncan, that you ask about and that my friend discussed, there's all sorts of distinctions between that case. The lady in that case was only asked twice to get out. Mr. Rucker was asked 20 times. There was a child in the car, no child here at 3 a.m. in the morning. They immediately busted the window. That didn't happen in this case. Again, 20 times they asked him to get out of the vehicle and had to call another officer to bring advice to be able to. Is it true they did not warn him, our 21st time, we'll break the window? That's true, Your Honor. Now, on the video, you can hear the officer communicating to another officer over the radio saying, can we break the window? We're going to break the window. But I don't think it's the factual record indicates that Mr. Rucker would have heard that statement. But, again, I don't think it matters. I think the Priester case says it doesn't matter. DeVille, again, was 2009. Obviously the Supreme Court has said, you know, instructed courts to be weary of older cases that came before recent announcements to be more specific in identifying clearly established law. And I think that you get to the Priest case in 2021, and they clearly didn't think DeVille was clearly established law in that case. The question of passive resistance, that is a question of law, and refusal to follow oral commands 20 times is active resistance, not passive resistance. And that is clear from the case law. And all of this is rapid evolving, no doubt. You can see that from the video. And basically what these courts' cases say, if you have an individual that refuses 20 law enforcement commands, a reasonable officer doesn't have to think all of a sudden that the person is going to say, okay, I give up now, and I'm going to quit resisting. You're saying that's what justifies what is claimed to be excessive force? I do. I think it explains the reasonableness of the law enforcement. Whatever your explanation is, I guess what I'm asking, force, put him on the ground. What clearly established law would say that was all right? Well, I think that switches the burden. I think he's got the burden to say clearly established law that it's not okay. I guess I asked it the wrong way, but you're right. So is there no clearly established law that you can't physically put somebody on the ground who's not resisting? Or you say there's a reasonable belief that he was resisting? I think there's a reasonable belief that he was resisting, and I also think the Fourth Amendment cases say that every lawful arrest necessarily comes with some level of physical interaction, and the question is what physical interaction is reasonable and what's not. And it's reasonable in this case when somebody refuses 20 law enforcement commands to forcibly remove them from the car. In fact, in the Priester case, it was reasonable when somebody refused two commands. So here we have 18 more. Going back to the initial reasonable suspicion, what's the evidence in the record that it was a high-crime area? That sounds like it was disputed or that there was little evidence. It was not disputed, Your Honor. What happened was all of the officers testified that it was a high-crime area. The plaintiff testified he had no idea one way or the other, so the officer's conduct was uncontradicted. What then happened was we put in a report that in 2020, the year up until this event, there had been 20 complaints or 74, I'm sorry, 74, 72, something like that, citizen complaints of calls to get those officers to that area. That evidence is not necessary in the record, but it was just added to show the amount of complaints that the officers received. There's no contrary evidence. That area being the hotel? Right, Dreamland Motel, not hotel. This is by no means the Windsor Court or any other nice hotel. This is a motel that everybody in the area knows is known for crime, and it's undisputed. All that you have contrary to that is argument in a brief with no supporting evidence. Red light, Mr. Butler. Thank you, Your Honors. Thank you. Thanks. Thanks to you both.